UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
———————————————————————

ALQUITA R.,

           Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

———————————————————————

**DECISION AND ORDER**

21-CV-170S

1.      Plaintiff Alquita R.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits and supplemental security income under Title II of the Act.  (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

2.      Plaintiff protectively filed her application with the Social Security Administration on July 19, 2018.  Plaintiff alleged disability beginning February 21, 2017, due to post-concussion syndrome, cervicalgia, major depressive disorder/mood disorder, post-traumatic stress disorder ("PTSD").  Plaintiff's application was denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

3.      On April 6, 2020, ALJ Sharda Singh held a telephone conference hearing due to COVID-19 at which Plaintiff—represented by counsel—and Vocational Expert

---

[1]In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

Brianne Lott appeared and testified.  (R.[2] at 10, 38-76.)  At the time of the hearing, Plaintiff was 29 years old on her onset date, with a high school education, and work history as a corrections officer (medium exertion work) and a secretary (sedentary work) (R. at 20).  Plaintiff suffered a head injury working at a correctional facility and injured herself on February 21, 2017, when she fell due to dizziness on stairs.  (R. at 443, 444; Docket No. 7, Pl. Memo. at 5.)

4.      The ALJ considered the case *de novo* and, on May 29, 2020, issued a written decision denying Plaintiff's application for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action, challenging the Commissioner's final decision.[3]  (Docket No. 1.)

5.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 7, 8.)  Plaintiff filed a response on February 10, 2022 (Docket No. 9), at which time this Court took the Motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion is **denied**, and Defendant's Motion is **granted**.

6.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to

---

[2]Citations to the underlying administrative record are designated as "R."

[3]The ALJ's May 29, 2020, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

"more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7.     "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

9.      The five-step process is as follows:

>    First, the [Commissioner] considers whether the claimant is
>    currently engaged in substantial gainful activity.  If [s]he is not,
>    the [Commissioner] next considers whether the claimant has
>    a "severe impairment" which significantly limits [her] physical
>    or mental ability to do basic work activities.  If the claimant
>    suffers such an impairment, the third inquiry is whether, based
>    solely on medical evidence, the claimant has an impairment
>    which is listed in Appendix 1 of the regulations.  If the claimant
>    has such an impairment, the [Commissioner] will consider
>    [her] disabled without considering vocational factors such as
>    age, education, and work experience; the [Commissioner]
>    presumes that a claimant who is afflicted with a "listed"
>    impairment is unable to perform substantial gainful activity.
>    Assuming the claimant does not have a listed impairment, the
>    fourth inquiry is whether, despite the claimant's severe
>    impairment, [s]he has the residual functional capacity to
>    perform [her] past work.  Finally, if the claimant is unable to
>    perform [her] past work, the [Commissioner] then determines
>    whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10.      Although the claimant has the burden of proof on the first four steps, the

Commissioner has the burden of proof on the fifth and final step.  See Yuckert, supra,

482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step

is divided into two parts.  First, the Commissioner must assess the claimant's job

qualifications by considering her physical ability, age, education, and work experience.

Second, the Commissioner must determine whether jobs exist in the national economy

that a person having the claimant's qualifications could perform.  See 42 U.S.C.

§ 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460,

103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

11.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 21, 2017, onset date.  (R. at 12.)  At Step Two, the ALJ found that Plaintiff has the following severe impairments:  post-concussion syndrome, cervicalgia, major depressive disorder/mood disorder, and PTSD.  Id. at 13.  At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 13-15.

12.     Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work.  (R. at 15-16.)  The ALJ concluded that Plaintiff never climb ladders; that she can frequently climb ramps and stairs.  She has occasional rotation of the neck.  She has no overhead reaching with upper extremities.  Plaintiff has frequent fine and gross hand manipulations bilaterally.  The ALJ then found that Plaintiff should avoid bright lights (that is, defined as anything above office lighting).  Plaintiff is further limited to understanding, remembering, and carrying out simple and routine, repetitive noncomplex tasks with occasional contact with supervisors, coworkers, and the public. (R. at 16.)

13.     At Step Four, the ALJ found Plaintiff is unable to perform any past relevant work based upon the testimony of vocational expert.  (R. at 20.)  At Step Five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  The ALJ posed hypotheticals to the vocational expert of a claimant like Plaintiff in age, education, and work experience.  The expert then opined that the hypothetical claimant could perform such light exertion work as shipping-and-receiving

weigher, marker, and mail sorter.  (R. at 21.)  Accordingly, the ALJ concluded that Plaintiff is not disabled.  (R. at 21, 22.)

15.    Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ erred in relying upon evidence of Plaintiff's treatment noncompliance to support the RFC and that the RFC was not supported by substantial evidence.  For the reasons that follow, these arguments are unavailing.

15.    Under the Social Security standards applicable for Title II applications filed after March 2017 for evaluating medical evidence, the agency considers the persuasiveness of a medical opinion, 20 C.F.R. § 404.1520c(a).  The agency considers the supportability and consistency of the opinions as the most important factors, id. § 404.1520c(c)(1), (2), (b)(2).  The ALJ must explain his approach with respect to supportability and consistency when considering a medical opinion, Melissa F. v. Comm'r, No. 20CV1363, 2021 WL 3887256, at *3 (W.D.N.Y. Aug. 31, 2021) (Carter, Mag. J.) (citing, e.g., 20 C.F.R. § 404.1520c(b)).  The more consistent a medical opinion is with the rest of the evidence from other medical and nonmedical sources, the more persuasive the opinion will be, 20 C.F.R. § 404.1520c(c)(2).  The ALJ, however, is not required to articulate how each medical opinion is considered, 20 C.F.R. § 404.1520c(b)(1).

16.    Plaintiff argues that her noncompliance with treatment does not preclude a finding of disability, Frankhauser v. Barnhart, 403 F. Supp. 2d 261, 277 (W.D.N.Y. 2005) (Foschio, Mag. J.) (Docket No. 7, Pl. Memo. at 17).

17.    The ALJ noted medication noncompliance at least two times in the ALJ decision.  In finding persuasive the opinion of state agency psychological consultant Dr. S. Juriga, Ph.D., the ALJ noted that the evidence showed ongoing psychiatric

symptoms and functional limitations but there are issues of noncompliance with treatment (R. at 19, 79-80, 82, 84).   The ALJ found the consultative evaluation of Dr. Stephen Farmer, Psy. D. (R. at 537), was somewhat persuasive but not fully supported by the record, again noting that (a week before Dr. Farmer's evaluation) Plaintiff admitted to not taking her medication and being discharged from Dent Neurological Institute ("Dent") psychiatry department due to appointment noncompliance (R. at 19, 543, 561; see Docket No. 8, Def. Memo. at 13).

18.    Plaintiff objects to the ALJ's consideration of these opinions (Docket No. 7, Pl. Memo. at 17-18).  She argues that the ALJ did not consider the disabling nature of her mental illness that caused her noncompliance (id. at 19), pointing to her testimony that she struggled mentally in taking her medication (id.; R. at 51-52).

19.    Commissioner responds that ALJ properly evaluated medical support opinion evidence (Docket No. 8, Def. Memo. at 10-14, 12-13).

20.    Commissioner further contends that the ALJ properly considered Plaintiff's noncompliance with her treatment in forming the RFC (id. at 15).  Commissioner argues that Plaintiff has not provided evidence of regular deficits in judgment and cognition to conclude that Plaintiff's mental condition led to her failing to pursue treatment (id.) thus the ALJ appropriately considered Plaintiff's noncompliance with treatment in evaluating her subjective complaints (id.).

21.    Plaintiff generally replies that the Commissioner is making a post hoc rationalization that the ALJ did not find (Docket No. 9, Pl. Reply Memo. at 1-2) without identifying specific objectionable rationalizations.

22.    ALJ appropriately considered Plaintiff's noncompliance with treatment when evaluating his subjective complaints (see Docket No. 8, Def. Memo. at 15).

23.    Plaintiff told Dr. Farmer during the consultative evaluation that she had monthly psychiatric appointments at Dent Neurological (R. at 537).  In a reevaluation by Dent one week before Dr. Farmer's evaluation, however, Dent stated that Plaintiff was discharged from Dent's psychiatric care due to appointment noncompliance and noted her admission that she did not use many of her prescribed medication because of her anxiety related to possible side effects (R. at 532, 19) despite reporting in the reevaluation that she was taking medication (R. at 533).

24.    The Court in Frankhauser observed that

"Compliance with prescribed treatment that is capable of restoring a plaintiff's ability to work is required to obtain benefits, unless there is a good reason for not following prescribed treatment.  20 C.F.R. §§ 404.1530, 416.930. '[T]he ALJ has an obligation to take the claimant's mental limitations into account in determining whether such a failure truly reflects an improvement in his condition.' 20 C.F.R. §§ 404.1530(c),"

Frankhauser, supra, 403 F. Supp. 2d at 277-78.

25.    There is no good reason given for Plaintiff not taking prescribed treatment.

26.    Plaintiff's noncompliance arises from her declining hospitalization in 2017 and her assertion in 2018 that she stopped taking her medication.

27.    On September 29, 2017, Dr. Sanjay Gupta of Dent Neurological Institute diagnosed Plaintiff with PTSD and recommended to Plaintiff hospitalization at BryLin Hospital but Plaintiff refused (R. at 487, 250, 18).  Plaintiff had not taken psychiatric or pain medication and Dr. Gupta prescribed Minipress for her PTSD (R. at 487, 489, 250, 252, 18).  Plaintiff's PHQ-9 score was 20 (out of 27), deemed severe depression (R. at

488, 251).  Dr. Gupta examined Plaintiff and found that her judgment and insight were fair (R. at 488, 251).

28.     In subsequent examinations at Dent, Plaintiff continued to decline hospitalization (R. at 484, 253, 47, 479, 18), with Dent finding that Plaintiff did not pose a danger to herself or others despite declining hospitalization (R. at 485-86, 255).  Plaintiff explained that she worked, and contracted PTSD, at a correctional facility, so she believed that an essentially involuntary hospitalization would be similar to incarceration (R. at 484, 253, 18).  On October 6, 2017, Dent observed that Plaintiff had PHQ-9 score of 21 indicating severe depression (R. at 484, 253) and her insight and judgment decreased (R. at 485, 255).  Plaintiff consented to electroconvulsive therapy ("ECT") (R. at 18, 485, 254) although she latter stopped this treatment (R. at 477, 479, 450).

29.     Dent's subsequent examinations of Plaintiff before she stopped psychiatric treatment noted that her insight and judgment (as well as her concentration) decreased (R. at 482, 449).

30.     This psychiatric record, however, does not indicate impairment that rationalizes Plaintiff declining treatment or refusing to take medication.  Prior to the September 2018 reevaluation (and even within that report) Plaintiff had reported consistently taking medication (R. at 484-85, 254, 448, 477 (Dec. 22, 2017, Plaintiff did not want changes to Minipress dosage), 553).  On November 3, 2017, Plaintiff reported improvement in her depression and reduction of her PTSD since increasing dosage of Risperdal and Prazosin (R. at 480).  The conflict of evidence as to her compliance with medication rests with the ALJ's discretion, Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir.

2002); <u>Schaal v. Apfel</u>, 134 F.3d 496, 504 (2d Cir. 1998) (Docket No. 8, Def. Memo. at 11).

31.     Plaintiff declined hospitalization in 2017 because of its resemblance to her of incarceration and her employment at a prison (where her PTSD began) without connection to mental health impairment (R. at 484).

32.     Plaintiff has not shown that her noncompliance is due to her condition, a possible good reason for noncompliance.  Her Motion for Judgment on the Pleadings (Docket No. 7) on this ground is denied.

33.     Plaintiff next argues that the RFC was not supported by substantial evidence (Docket No. 7, Pl. Memo. at 21-22).  She claims decreased range of motion in her neck due to neck pain disabled her (<u>id.</u> at 21; R. at 56-58, 61).  She also complains that she could not be around other people because of her injuries and persistent migraines and pain from exposure to light (Docket No. 7, Pl. Memo. at 21; R. at 45, 46). Plaintiff claims that the ALJ cherry picked from the medical opinions to arrive at the RFC (Docket No. 7, Pl. Memo. at 21-22).

34.     Regarding Plaintiff's range of motion, Defendant cites the ALJ's evaluation of medical opinions of her functioning (Docket No. 8, Def. Memo. at 13-14).

35.     The ALJ found Plaintiff could perform light work but with occasional rotation of her neck (R. at 15, 16).  The ALJ found "somewhat persuasive" the evaluation of consultative physician Dr. John Schwab that Plaintiff had marked restriction in moving her head (R. at 19, 550-51).  Dr. Schwab observed that Plaintiff's cervical spine had full flexion and extension with rotation right and left each 10 degrees, lateral flexion right 10 degrees and left 10 degrees (R. at 550).  The ALJ found that some of the treating records and

findings of the consultative evaluation showed some limitation in range of motion of the cervical spine (R. at 19, 333, 349, 460, 467, 534, 558, 562, 566; see Docket No. 8, Def. Memo. at 14) but Dr. Schwab did not address any exertional limitations due to her impairments (R. at 19).  While these examinations noted decreased strength, the ALJ concluded that Plaintiff still could perform light work (R. at 19; Docket No. 8, Def. Memo. at 14).

36.     ALJ also relied upon the workers compensation independent medical examination by Dr. Patrick Hughes that Plaintiff could perform light duty work despite her injuries (R. at 437, 17).

37.     Plaintiff's objection to the range of neck motion is solely based upon her testimony of her subjective complaints.  Plaintiff has not met her evidentiary burden of providing medical evidence to support her subjective complaints.

38.     As for Plaintiff's migraines and light sensitivity, she also has not produced evidence that  her migraines and light sensitivity were disabling.  Plaintiff merely cites her testimony of her subjective complaints (Docket No. 7, Pl. Memo. at 21, citing R. at 45, 46) without medical substantiation.  The ALJ observed that Plaintiff complained of migraines and photophobia but an MRI of her brain was essentially unchanged (R. at 16, 332-33) with medication later prescribed for her migraine headaches (R. at 17, 556-58). Furthermore, the ALJ factored Plaintiff's light sensitivity in finding in the RFC that she should avoid lighting brighter than office lighting (R. at 16).

39.     Therefore, Plaintiff's Motion for Judgment (Docket No. 7) on these grounds is denied.

40.     Plaintiff's application was filed after March 2017 and is governed by the new rules for consideration of Social Security applications, including the ALJ's assessment of supportability and consistency of medical opinions.  Hence, Plaintiff's "cherry picking" and use of non-treating, non-examining physician's opinion objections fails.   Under the March 2017 standards, the ALJ need not articulate how a medical opinion is considered, 20 C.F.R. § 404.1520c(b)(1).  The cases she cites against cherry picking from the medical record, e.g., Proper v. Comm'r, No. 12CV98, 2014 WL 7271650, at *14 (W.D.N.Y. Dec. 14, 2014) (Telesca, J.), predate the March 2017 regulations.  She cites to the pre-2017 regulations for the source of opinions (cf. Docket No. 7, Pl. Memo. at 22, citing 20 C.F.R. § 404.1527(d)(1)).  Her Motion for Judgment (Docket No. 7) based upon the standards for evaluating physicians' opinions is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:         January 23, 2023
               Buffalo, New York


                              s/William M. Skretny
                              WILLIAM M. SKRETNY
                              United States District Judge